## Bank of Philadelphia and Trust Company *v.* Wabash Railway Co.

Argued March 12, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*J. Hamilton Cheston,* and with him *J. Howard Rhoads* and *Theodore W. Reath,* for appellant.

*David F. Maxwell,* and with him *Anthony H. Whitaker* and *Edmonds, Obermayer and Rebmann,* for appellee.

OPINION BY CUNNINGHAM, J., April 15, 1931:

The action below was assumpsit commenced by a writ of foreign attachment; the Bank of Philadelphia and Trust Company, a Pennsylvania corporation, was plaintiff therein and Wabash Railway Company, a corporation of the State of Indiana, defendant; several companies, among them the Reading and the Pennsylvania Railroad, were named and served as garnishees. This appeal arises out of an effort by the Pennsylvania Railroad Company to have the attachment dissolved upon the ground that plaintiff's affidavit of cause of action was insufficient. A general outline of the litigation, as stated by plaintiff, is that

the plaintiff bank, having become the holder in due course for value of two negotiable uniform order bills of lading—one issued by Wabash Railway Company and the other by Reading Company and each covering certain shipments of metal—entered into an oral contract with Wabash Railway Company, the principal defendant, by the terms of which that company undertook, in consideration of the turning over to it by the bank of the bills of lading and the payment of its charges, to deliver the merchandise covered thereby to the bank, at the Shackamaxon Station of the Pennsylvania Railroad in Philadelphia. The bills of lading were turned over to and receipted for by Wabash Railway Company but that company neglected and refused to deliver the shipments to plaintiff, and, in fact, had them brought to Philadelphia without notice to it, and there delivered them to a third party, Keystone Lead Company, Inc. The plaintiff bank, asserting that it has been damaged through the failure of Wabash Railway Company, a foreign corporation, to perform its part of the oral contract and that it has property within the County of Philadelphia, consisting of moneys, credits and choses in action due and owing from Pennsylvania Railroad Company and other Pennsylvania corporations, instituted this proceeding.

On September 17, 1930, Pennsylvania Railroad Company obtained, as garnishee, a rule on plaintiff to show cause why the attachment should not be dissolved; it was set forth in the petition for the rule that plaintiff's affidavit of cause of action, filed August 12, 1930, was insufficient upon five grounds, hereinafter referred to in detail. After argument, the court below, for the reasons stated in an opinion by FERGUSON, P. J., discharged the rule and Pennsylvania Railroad Company took this appeal from that order.

The single question now involved is whether plaintiff's affidavit of cause of action was sufficient. It contained these material averments: On March 4, 1929,

Wabash Railway Company issued a negotiable uniform order bill of lading, covering 3,633 pounds, in 53 "pigs," of Babbitt metal for remelting purposes. A paper, averred to be "a true and correct copy" of the bill, was attached to the affidavit as Exhibit A, in which it was recited that defendant had received the metal at Chicago, Ill., from Star Smelting and Refining Corporation, that the shipment was consigned to the order of that corporation, and that the destination was Detroit, Mich., "notify Keystone Lead Co., c/o Great Lakes Chemical Works at Ferdinand St., Detroit ......Route via Wabash R. R." On June 7, 1929, the Reading Company (also a garnishee) issued at Philadelphia a similar bill of lading for 3,192 pounds, 50 "pigs," of the same kind of metal, in which the consignor was Keystone Lead Company, Inc., and the merchandise was consigned to the order of that company at Detroit, with instructions to notify Great Lakes Chemical Works; the route was "Reading Company—D. L. & W. R. R.—Wabash R. R. to Ferdinand St. team tracks." It was also stated that "a true and correct copy" of this bill of lading was attached as Exhibit B. The fifth paragraph of the affidavit reads: "On or about the 6th day of March, 1929, title to the goods covered by the aforesaid negotiable uniform order bill of lading mentioned in paragraph three hereof and attached hereto as Exhibit 'A,' was transferred to the plaintiff for good and sufficient consideration and the said bill of lading was duly endorsed and delivered to the plaintiff by the consignee named therein and the plaintiff became the holder thereof in due course, for value, without notice of any defects in the title thereof or defenses thereto." In the sixth paragraph it was averred that on June 7, 1929, the bill of lading of the Reading Company was similarly endorsed and delivered to plaintiff by the consignee named therein. The next averment was that on September 7, 1929, the Philadelphia agent of the defend-

ant entered into an oral contract with the plaintiff "wherein and whereby the defendant agreed that it would deliver or cause to be delivered the merchandise covered by the two negotiable uniform order bills of lading above mentioned, to the plaintiff at the Shackamaxon Station of the Pennsylvania Railroad in Philadelphia, Pennsylvania, in consideration of the delivery of the said two negotiable uniform order bills of lading by the plaintiff to the defendant and in further consideration of the payment by the plaintiff to the defendant of the full amount due and owing to the defendant on account of its charges for freight, storage and otherwise, at the time of the delivery of the merchandise covered by the said bills of lading." Further averments were that, pursuant to the oral contract, plaintiff on the date thereof delivered the bills to the defendant and obtained its receipt therefor, a copy of which was attached as Exhibit C. Each bill of lading was described in detail in the receipt and with respect to the first it was stated that it was "endorsed by Star Smelting and Refining Company and Keystone Lead Company" and as to the second that it was "endorsed Keystone Lead Company." Plaintiff then averred that it had at all times been ready and willing to pay defendant the full amount of its charges but that defendant, in violation of the contract, "failed, neglected and refused and continues to fail, neglect and refuse to deliver the merchandise covered by the said two negotiable uniform order bills of lading to the plaintiff, but, on the contrary, the defendant caused or procured the merchandise covered by the said two negotiable uniform order bills of lading to be returned to Philadelphia, Pennsylvania, without notifying the plaintiff bank and there delivered to the Keystone Lead Company, Inc., and/or to the trustee in bankruptcy of the said company." As to damages, the averment was that the "fair, reason-

able and market value" of the merchandise covered by the bills of lading was $2,433.34.

Appellant's objections to the affidavit are highly technical and, in our opinion, without substantial merit. They may be thus summarized: (a) the affidavit lacks a positive oath; (b) Exhibits A and B disclose on their face that full and complete copies of the bills of lading were not attached; (c) the averments of due endorsement of the bills are conclusions of law unsupported by proper allegations of fact; (d) the affidavit lacks a sufficiently explicit averment that the merchandise was in the possession of defendant at the time the alleged contract for delivery thereof to plaintiff was made; and (e) a sufficient basis for the assessment of damages is not set forth. With respect to (a), the affidavit shows that it was made by the vice-president and treasurer of the plaintiff corporation and it is therein stated "that he is duly authorized to take this affidavit in its behalf and that the facts as hereinafter set forth, insofar as they are within his knowledge, are true and correct, and insofar as they are based upon information furnished him by others, he believes them to be true and correct and expects the plaintiff to be able to prove the same at the trial of the cause." We agree with the statement in the opinion of the court below that it is difficult to see how an officer of a corporation could make a more positive oath. The case of McLennan v. Public Utilities Construction Co., 245 Pa. 567, cited in behalf of appellant, has no application here. In that case the plaintiff was an individual; the only averment was that the facts in the affidavit there filed were "true to the best of deponent's knowledge and belief," and there was no averment that plaintiff expected to be able to prove the same at the trial. Counsel for appellant correctly state that when ruled by a garnishee to file an affidavit of cause of action the plaintiff is required to state his cause of action with certainty in order that

the principal defendant whose property is attached may know for what cause it has been seized. The force of their objections to the affidavit should be measured by this test.

Turning to objection (b), to the effect that Exhibits A and B, attached to the affidavit, are not in fact full copies of the bills of lading, we observe from the record, as printed by appellant, that plaintiff, before filing its cause of action, sought, by rule, to require defendant to produce these documents for its inspection and in aid of the preparation of its affidavit. The application was resisted by defendant and plaintiff's rule was discharged upon the ground that as defendant was a foreign corporation the court had no jurisdiction to order it to produce the bills of lading. The argument for appellant seems to be that because there is a reference on the face of each bill to "the conditions on back hereof" and the backs of the exhibits are blank the court below should have drawn the conclusion that the exhibits are not full copies. The writer of the opinion below disposed of this contention in this language: "Whether or not the bills of lading were proper documents cannot be determined upon this rule. Plaintiff says that the copies attached are true copies. If anything is omitted from the copies it is a matter of evidence." To this we may add that the action is based upon the alleged oral contract to deliver the merchandise to the plaintiff and not upon the bills of lading. They are merely evidence of plaintiff's title to the metal and of its right to contract for delivery. The case cannot be tried on this rule and, if the original bills contained any additional conditions material to the issues which will be involved, this fact may be shown as a matter of defense. In view of the specific averment that the original bills were delivered by plaintiff to the defendant and receipted for by it, and noting defendant's

apparent declination to permit inspection, it is difficult to discover any merit in the present contention.

Nor are we impressed with objection (c), criticising the averments of the affidavit with relation to the endorsement of the bills by the respective consignees, particularly as defendant in its receipt to plaintiff expressly acknowledged that each bill was endorsed by the consignee named in the receipt.

In disposing of objection (d), based upon the contention that the affidavit does not contain a sufficient averment that the metal was in the possession of defendant when the contract was made, the court below said: "While the affidavit does not state that the goods were actually received by defendant for carriage, it alleges that defendant contracted to deliver the goods to plaintiff and also shows that defendant must have been in possession of the goods, because it delivered them to some person other than plaintiff. The affidavit is explicit in saying that defendant failed to deliver the merchandise to plaintiff, and this is the breach of contract relied upon." It is urged that the strongest interpretation which should be put upon the averment (above quoted) is that defendant "caused or procured" the metal to be "returned to Philadelphia......and there delivered" to a corporation other than plaintiff. The contract sued upon was primarily a contract for delivery and not for carriage, and we think the averments relative to the issuing of the bills for shipments over the routes therein designated and the averments relative to defendant's misdelivery, taken together, amount to a sufficient statement that defendant had control over the merchandise when the contract for its delivery to plaintiff was made.

We also agree with the court below that, if an erroneous basis for the assessment of damages has been stated by plaintiff, as charged in objection (e), that matter may be made the subject of a proper amendment prior to trial.

The single assignment of error is to the order of the court below discharging appellant's rule to dissolve the attachment and it follows from what has been said that it must be overruled.

Order affirmed with a procedendo.